**No. 2017-1672**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

WILLIAM GRECIA,

*Plaintiff- Appellant*,

v.

MCDONALD'S CORPORATION,

*Defendant-Appellee*.

**Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:16-cv-02560, Judge Sharon Johnson Coleman**

# BRIEF OF DEFENDANT-APPELLEE
# McDonald's Corporation

Edward H. Rice
David J. Doyle
Marina N. Saito
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6000
*Counsel for McDonald's Corporation*

May 25, 2017

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 28(a)(1) and 47.4(a), counsel for defendant-appellee McDonald's Corporation certifies as follows:

1. The full name of every party represented by me is:

   McDonald's Corporation

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   Not Applicable. McDonald's Corporation is the real party in interest.

3. No parent corporations or publicly held companies own 10 percent or more of McDonald's Corporation's stock.

4. All law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Edward H. Rice
   David J. Doyle
   Marina N. Saito
   FREEBORN & PETERS LLP
   311 South Wacker Drive, Suite 3000
   Chicago, IL 60606
   (312) 360-6000
   *Counsel for McDonald's Corporation*

May 25, 2017

/s/ Edward H. Rice
Edward H. Rice
David J. Doyle
Marina N. Saito

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

STATEMENT OF RELATED CASES ........ iv

STATEMENT OF THE ISSUES ........ 1

STATEMENT OF THE CASE ........ 1

SUMMARY OF THE ARGUMENT ........ 3

ARGUMENT ........ 4

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
631 F.3d 1279 (Fed. Cir. 2011) ........................................ 6, 7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........................................ 4

*Rexnord Corp. v. Laitram Corp.*,
274 F.3d 1336 (Fed. Cir. 2001) ........................................ 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ........................................ 4, 5, 6

**STATEMENT OF RELATED CASES**

No other appeal in or from the same civil action in the district court was previously before this or any other appellate court. Defendant-Appellee McDonald's Corporation is not aware of any other case pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

No court has imposed infringement liability for "using" a patented system upon an entity that neither operates nor controls *any* component of the claimed system. Mr. Grecia's complaint, which accuses McDonald's of "using" a patented "tokenization" system employed in credit card authorization networks, further alleges that the card companies operate and control *every* component of the claimed system. Did the district court properly find that McDonald's could not be liable, as a matter of law, for "using" the patented system when Mr. Grecia conceded that McDonald's does not control *any* component of his claimed system?

## STATEMENT OF THE CASE

Mr. Grecia's complaint accuses McDonald's of infringing various system claims in U.S. Patent Nos. 8,533,860 and 8,402,555, which address a type of "tokenization" system that can be used to enhance security for credit card information. (Grecia Br.[1] at 2.) Claim 9 of the '860 patent and claim 12 of the '555 patent exemplify all the asserted claims. (Grecia Br. at 4.)

Mr. Grecia's complaint accuses McDonald's of infringing his patents solely through McDonald's alleged "use" of the system defined in these two patent claims. (Appx44, ¶ 9; Appx53, ¶ 16.) The complaint does not allege that McDonald's infringes through any other means (manufacture, sale, etc.).

[1] April 24, 2017 Brief of Plaintiff-Appellant William Grecia.

Each asserted patent claim is directed to a system that combines six system components (called "modules"). (Appx44-46, ¶ 10; Appx53-55, ¶ 17.) For each asserted claim, the complaint "reads" the claim limitations onto the accused system—*i.e.*, it identifies the accused system components that correspond with the six claimed modules. (Appx44-52, ¶¶ 10-13; Appx53-62, ¶¶ 17-20.)

The complaint specifies that each of the six accused components resides on a credit card company's servers (*e.g.*, Visa's servers[2]). (Appx44-46, ¶ 10; Appx53-55, ¶ 17.) The complaint recognizes that Visa operates and controls *every* accused component. (Appx44-46, ¶ 10; Appx53-55, ¶ 17.) Correspondingly, Mr. Grecia concedes that McDonald's neither operates nor controls any of these components. (Grecia Br. at 2.)

The complaint alleges that McDonald's infringes his patent claims by "using" Visa's tokenization system when accepting Visa card payments from McDonald's customers. (Appx44-45 ¶ 10a, Appx53-54 ¶ 17a.) When a customer pays with a Visa card, for example, the customer (or McDonald's employee) "swipes" the card through a card reader, which sends a signal into the Visa system. (Appx44-45 ¶ 10a, Appx53-54 ¶ 17a.) The complaint alleges that this signal is received by Visa's "VisaNet server," which allegedly corresponds to the claimed

[2] Like Mr. Grecia (Grecia Br. at 6), McDonald's will refer to Visa for simplicity to represent the various credit card companies to which the complaint refers.

"first receipt module"—*i.e.*, the claimed system's first component. (Appx44-45 ¶ 10a, Appx53-54 ¶ 17a.)

In short, for purposes of this appeal, the parties appear to agree that McDonald's card reader falls outside the claimed system, but it sends a signal into a Visa system that allegedly includes all components of the asserted system claims.[3]

## SUMMARY OF THE ARGUMENT

Mr. Grecia accuses McDonald's of "using" his patented system, though he acknowledges that McDonald's does not operate or control *any* component of the claimed system. No court has ever imposed "use" infringement liability under these circumstances. Mr. Grecia's argument hinges entirely upon language lifted out of context from the *Centillion* case. That case addressed a multiple-operator system claim (*i.e.*, where different entities operated different claimed system components). *Centillion* does not apply to the single-operator system claimed here. Rather, the outcome here is governed by the *Uniloc* case which, like the present case, addressed "use" infringement in the context of a single-operator system claim.

[3] See Grecia Br. at 2 ("Grecia alleges that the McDonald's act of reading a customer's credit card at the point of sale in order to authorize the customer's access to digital content puts the patented system into service by sending the customer's credit card information through the system's six modules, all physically controlled by the credit card companies").

**ARGUMENT**

Patent claims define the scope of the patentee's right to legal protection. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Accordingly, any infringement analysis begins with the language of the claims. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341 (Fed. Cir. 2001) (in an infringement analysis, "the court first determines, as a matter of law, the correct claim scope," which begins "as it always should: with the language of the claims"). This basic principle applies to system claims no less than any other claim. To perform an infringing "use" of a system claim, therefore, one must "use" the system as defined by the claim.

The complaint does not allege that McDonald's operates or controls any component of the claimed system. On the contrary, Mr. Grecia concedes that all six of the claimed system modules are "controlled by the credit card companies." (Grecia Br. at 2.) Accordingly, the narrow question presented on appeal is whether McDonald's can infringe, as a matter of law, when it does not operate or control any component of the system defined in the asserted claims. In other words, is it possible to infringe a system claim by sending a signal into a system from a point entirely outside the system boundary as defined by the patent claims?

The answer to this question is found in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011). There, the defendant (Microsoft) tried to avoid

liability for allegedly using a claimed system for registering software to deter unauthorized copying. *Id*. The system required an end user to enter certain user information (*e.g.*, a software serial number), which was received by a "remote registration station." *Id*. Microsoft argued that it did not "use" the system because the accused system could not operate without the end user computers, which Microsoft did not operate or control. *Id*. at 1308.

This Court rejected that argument, noting that the asserted claim was drafted in a manner that "focuses exclusively on the 'remote registration station'"—which was controlled by Microsoft. *Id*. at 1309. Though end user computers were a necessary part of the broader "environment" in which the claimed system operated, those computers fell outside the patent claims. *Id*. In other words, the patent claims defined boundary lines surrounding the claimed portion of the system. Since Microsoft controlled the system components that fell within these boundary lines, Microsoft alone "used" the *claimed* system. The *Uniloc* holding establishes that when you have a single-operator system (where a single entity controls and operates all of the *claimed* system components), that operator is the system's "user" for infringement purposes.

Mr. Grecia tries to distinguish the *Uniloc* case on the grounds that the Court "declined to extend a divided infringement theory to a system claim." (Grecia Br. at 12.) But the *Uniloc* Court distinguished the "divided infringement" cases not

because the asserted claims in those cases claimed a system (as opposed to a method), but because the asserted claims were not divided between multiple entities. *Uniloc*, 632 F.3d at 1309. In the present case, as in *Uniloc*, the *claimed* system components are not divided between multiple entities. Rather, the asserted claims here—as Mr. Grecia concedes—focus on one entity, Visa.

Mr. Grecia also argues that in *Uniloc*, "the defendant did 'make' and 'use' the claimed system." (Grecia Br. at 12.) But that observation merely shows that the *Uniloc* plaintiff, unlike Mr. Grecia, chose to sue the entity that actually controlled the claimed system components. The role of Microsoft in *Uniloc* is akin to the role of Visa in the present case. Like Visa, Microsoft alone operated and controlled all of the components of the system as defined by the asserted claims. And like the end users in *Uniloc*, McDonald's falls entirely outside the bounds of the invention as defined by the asserted claims—even though its restaurants may be part of the broader "environment" in which the overall system operates. Just as Microsoft—rather than the end user—"used" the claimed system in *Uniloc*, so does Visa—rather than McDonald's—"use" the claimed system here.

Mr. Grecia cites to only one case in support of his infringement theory: *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011). *Centillion*, however, addressed a claim for a *multiple*-operator system. *Centillion*, 631 F.3d at 1283 ("We have never directly addressed the issue of

infringement for 'use' of a system claim that includes elements in the possession of more than one actor"). The *Centillion* court had to decide which (if any) of two system operators "used" the claimed system for patent infringement purposes. And it held that, as between two system operators, "use" liability rests with the one whose actions "put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Id.* at 1284.

Unlike *Centillion*, both *Uniloc* and the present case address single-operator system claims. Accordingly, the *Centillion* test for assessing "use" liability as between multiple-operators does not apply here. Rather, as in *Uniloc*, that liability necessarily rests with the sole operator of the claimed system. Mr. Grecia's argument ignores this distinction by attempting to apply *Centillion's* multiple-operator infringement test to a single-operator system claim. In doing so, Mr. Grecia ignores *Uniloc* and essentially negates the role of patent claims in determining an infringing "use" for a claimed system.

Moreover, applying *Centillion*'s "putting into service" test to entities that do not operate any component of the claimed invention would create bad policy and lead to incongruous results. For example, under Mr. Grecia's theory, Visa would not "use" its own tokenization system even if Visa operates and controls every component of the claimed system because Visa does not swipe the credit card that triggers the claimed system.

In fact, under Mr. Grecia's reading of *Centillion*, the entity that "uses" the claimed system for patent law purposes would be neither Visa *nor* McDonald's; it would be the customer. The customer places the alleged invention "into service" by purchasing a meal with a credit card and by inserting the card into the card reader. Mr. Grecia's reading of *Centillion* places no relevance on the fact that neither the customer nor McDonald's operates any component of the invention that Mr. Grecia defined in his patent claims.

Another example helps illustrate this point. Assume that an inventor obtained a patent on a motion-activated outdoor lighting system—*e.g.*, a system installed by a homeowner that activates outdoor flood lights when it senses motion. Under Mr. Grecia's analysis, the homeowner who installed and operated every component of that system would not "use" the system for patent law purposes. But a passerby who triggered the motion sensor as he walked down the sidewalk would be an infringing "user" because his actions "put the invention into service" and created a benefit to him by lighting his path. The passerby may "use" the system in a colloquial sense of the word, but he does not "use" the system for purposes of the patent statute because the patent laws do not authorize any court to impose "use" liability upon an entity that has not operated at least *some* component of a claimed system.

In the end, Mr. Grecia's only authority for his "use" liability theory is a case in which this Court analyzed liability as between two entities, each of which controlled different components of a claimed system. But as Mr. Grecia concedes, McDonald's does not control even one of the claimed system's six components. By attempting to apply the "putting into service" test here, Mr. Grecia divorces the *Centillion* language from its context. At the same time, Mr. Grecia's approach violates the bedrock principle that patent claim language defines the scope of the patentee's legal rights.

## CONCLUSION

McDonald's asks this Court to **AFFIRM** the district court's judgment.

Respectfully submitted,

/s/ Edward H. Rice

Edward H. Rice
David J. Doyle
Marina N. Saito
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6000

*Counsel for McDonald's Corporation*

**CERTIFICATE OF SERVICE**

I certify that I served a copy on counsel of record on May 25, 2017 by electronic means using the Court's CM/ECF system.

/s/ Edward H. Rice
Edward H. Rice
Counsel for McDonald's Corporation